```
 1                  UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NORTH CAROLINA
 2                        EASTERN DIVISION


 3


 4   UNITED STATES OF AMERICA,-   Docket No. 4:20-cr-115-FL-1
                               -
 5       Plaintiff,           -   New Bern, North Carolina
                               -   June 14, 2022
 6          v.                 -   Arraignment
                               -
 7   PATRICK FEDAK,            -
                               -
 8       Defendant.           -
     -------------------------------
 9
                        TRANSCRIPT OF ARRAIGNMENT
10          BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
                    UNITED STATES DISTRICT JUDGE.
11
     APPEARANCES:
12
     For the Plaintiffs:  United States Attorneys' Office
13                        By:  Barbara D. Kocher
                          150 Fayetteville Street, Suite 2100
14                        Raleigh, NC 27601
                          (919) 856-4500
15
     For the Defendant:  Federal Public Defender
16                        By: Lauren Harrell Brennan
                          150 Fayetteville St., Suite 450
17                        Raleigh, NC 27611-5967
                          (919) 856-4236
18
     Court Reporter:      Tracy L. McGurk, RMR, CRR
19                        413 Middle St.
                          New Bern, NC 28560
20                        (419) 392-6626

21


22
     Proceedings recorded by mechanical stenography,
23   transcript produced by notereading.

24


25
```

|   |   |   |
|---|---|---|
| | 1 | (Commenced at 12:27 p.m.) |
| | 2 | THE COURT:  Mr. Fedak returns now with a |
| 00:00:03 | 3 | plea agreement, and the Court dispenses with the Rule 17 |
| 00:00:09 | 4 | conference and turns its attention to a change of plea. |
| 00:00:15 | 5 | Is that the posture, counsel? |
| 00:00:18 | 6 | MS. BRENNAN:  Yes, Your Honor. |
| 00:00:19 | 7 | THE COURT:  So I've been given a plea |
| 00:00:21 | 8 | agreement where he proposes to plead guilty to Count |
| 00:00:24 | 9 | One, that being the crime beginning in or about December |
| 00:00:28 | 10 | of 2017, and continuing to on or about December 3 of |
| 00:00:35 | 11 | 2019, in this district and elsewhere, that Patrick Fedak |
| 00:00:39 | 12 | did willfully and knowingly embezzle, purloin, and steal |
| 00:00:43 | 13 | property of the United States, that is, various articles |
| 00:00:47 | 14 | belonging to the United States military, of a value |
| 00:00:50 | 15 | exceeding $1,000, with intent to convert said property |
| 00:00:55 | 16 | to his own use, in violation of a law recorded at Title |
| 00:00:59 | 17 | 18 of the Code at Section 641. |
| 00:01:02 | 18 | And the government stands ready to dismiss |
| 00:01:05 | 19 | the counts related to the stolen firearms described in |
| 00:01:10 | 20 | Count Two and the obstruction count in Count Three at |
| 00:01:16 | 21 | sentencing. |
| 00:01:16 | 22 | So this really kind of puts Mr. Fedak back |
| 00:01:19 | 23 | in the place that he was originally when he entered into |
| 00:01:22 | 24 | his first plea agreement; is that fair, Ms. Kocher? |
| 00:01:26 | 25 | MS. KOCHER:  In terms of the -- to what he |

00:01:28  1   is pleading to, yes, Your Honor.

00:01:30  2          THE COURT:  We don't undo the conduct, but

00:01:33  3   it's what he proposed to plead guilty to originally?

00:01:39  4          MS. KOCHER:  That is correct.

00:01:40  5          THE COURT:  You've heard the Court say

00:01:41  6   before, you face not more than ten years in prison, a

00:01:44  7   fine not to exceed a quarter of $1 million, or both a

00:01:49  8   fine and the term of imprisonment.  You could be

00:01:51  9   supervised for not more than three years; not more than

00:01:55  10  two years imprisonment if there was to be a revocation

00:01:58  11  of that term of supervised release.  Restitution could

00:02:00  12  well be an issue; I think it probably is.  And there's a

00:02:05  13  $100 special assessment.

00:02:06  14          And in the plea agreement the defendant

00:02:07  15  agrees to make restitution as required, to forfeit

00:02:12  16  certain property.  And you have agreed to give up or

00:02:17  17  lose some very valuable civil rights.

00:02:19  18          It's not the best copy of a plea agreement

00:02:23  19  that I've seen, but I think I can make it out.

00:02:26  20          Would you raise your right hand, Mr. Fedak,

00:02:28  21  and the clerk will administer an oath to you.

00:02:31  22          THE CLERK:  Please state your name.

00:02:34  23          THE WITNESS:  Patrick James Fedak.

00:02:38  24          (Whereupon the Defendant was sworn by the

00:02:45  25  clerk.)

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
| 00:02:45 | 1  | THE COURT:  Do you understand this is a                |
| 00:02:47 | 2  | felony offense, it's very serious, and you've got the  |
| 00:02:53 | 3  | right to a trial by jury?                              |
| 00:02:56 | 4  | THE DEFENDANT:  Yes, Your Honor.                       |
| 00:02:56 | 5  | THE COURT:  So if I accept your plea you're            |
| 00:02:58 | 6  | giving that up.  Do you understand that?               |
| 00:03:00 | 7  | THE DEFENDANT:  Yes, Your Honor.                       |
| 00:03:01 | 8  | THE COURT:  The purpose of this hearing is,            |
| 00:03:02 | 9  | as you're familiar with, is just to confirm you        |
| 00:03:05 | 10 | understand what you're charged with.  And I've read to |
| 00:03:09 | 11 | you Count One.  Do you understand what you're charged  |
| 00:03:12 | 12 | with?                                                  |
| 00:03:12 | 13 | THE DEFENDANT:  I do, Your Honor.                      |
| 00:03:13 | 14 | THE COURT:  And that you understand the                |
| 00:03:14 | 15 | possible penalties?  And I've read to you what they are. |
| 00:03:18 | 16 | Do you have any questions about that?                  |
| 00:03:20 | 17 | THE DEFENDANT:  No, Your Honor.                        |
| 00:03:20 | 18 | THE COURT:  And you understand what you're             |
| 00:03:21 | 19 | giving up by pleading guilty?                          |
| 00:03:25 | 20 | THE DEFENDANT:  Yes, Your Honor.                       |
| 00:03:25 | 21 | THE COURT:  So let me just lay out some                |
| 00:03:28 | 22 | groundwork.  At points in time I'm going to ask you some |
| 00:03:32 | 23 | questions.  I'm also going to ask you:  Are you being  |
| 00:03:35 | 24 | truthful and honest?  I've got to make sure that you   |
| 00:03:38 | 25 | understand what's happening here and that you're going |

```
00:03:40   1   forward and offering me a guilty plea of your own free
00:03:43   2   will.
00:03:48   3              THE DEFENDANT:  Yes, Your Honor.
00:03:49   4              THE COURT:  Do you have any reason to
00:03:51   5   question his competency, counsel?
00:03:53   6              MS. BRENNAN:  I do not, Your Honor.
00:03:54   7              THE COURT:  Have you taken any medicine or
00:03:56   8   drunk any alcohol in the last couple days?
00:04:00   9              THE DEFENDANT:  Just my normal prescribed
00:04:01  10   medicine, ma'am.
00:04:03  11              THE COURT:  Do those normal prescribed
00:04:05  12   medicines make it hard for you to hear or understand?
00:04:07  13              THE DEFENDANT:  No, Your Honor.
00:04:08  14              THE COURT:  Ms. Kocher, do you have any
00:04:10  15   reason to question his competency?
00:04:13  16              MS. KOCHER:  I do not, Your Honor.
00:04:14  17              THE COURT:  I think you're capable and
00:04:15  18   competent.  I think you've demonstrated that along the
00:04:21  19   way.  So I go forward on that basis.
00:04:28  20              Have you had enough time to talk with your
00:04:50  21   attorney to be ready for the proceedings today?
00:04:53  22              THE DEFENDANT:  Yes, Your Honor.
00:04:55  23              THE COURT:  How do you wish to plead to
00:04:57  24   Count One?
00:04:58  25              THE DEFENDANT:  Guilty, Your Honor.
```

00:05:07  1          THE COURT:  Do you understand if you violate

00:05:09  2   a term or condition of supervised release that may find

00:05:12  3   you going back to prison?

00:05:14  4          THE DEFENDANT:  I do, Your Honor.

00:05:14  5          THE COURT:  And if I accept your plea, I'm

00:05:18  6   going to adjudge you guilty of Count One, and you may

00:05:21  7   lose some very valuable civil rights.  Any questions

00:05:25  8   about that?

00:05:26  9          THE DEFENDANT:  None, Your Honor.

00:05:26  10          THE COURT:  Now, the sentencing process,

00:05:27  11   I'll just remind you, nobody knows how this case is

00:05:30  12   going to turn out; not me, not your attorney.   There

00:05:36  13   are a lot of steps that have to unfold.   And so if your

00:05:40  14   lawyer's told you how she thinks the case is going to

00:05:44  15   go, it's her best guess based on her considerable

00:05:47  16   knowledge, understanding, and experience.   But in no

00:05:52  17   way is that a guarantee as to what the advice of the

00:05:55  18   guidelines will turn out to be or what sentence the

00:05:57  19   Court will impose.   Do you understand that?

00:05:59  20          THE DEFENDANT:  I do, Your Honor.

00:05:59  21          THE COURT:  And so I do have to consider the

00:06:03  22   advice of the guidelines.   I'm not bound by them, but I

00:06:06  23   have to consider them.   And that includes giving you or

00:06:08  24   the government a chance to object to the proposals of

00:06:11  25   the probation office.   And that usually takes about 90

00:06:15  1  days, a little bit less, to unfold.  And then the Court

00:06:20  2  has to, with benefit of that advice -- which I don't

00:06:23  3  even need to think is reasonable at that time, it

00:06:26  4  depends -- but I have to fashion a sentence that's

00:06:29  5  sufficient but not greater than necessary that reflects

00:06:33  6  on a lot of sentencing factors, among them is the need

00:06:37  7  to discourage this type of conduct and to promote

00:06:39  8  respect for the law.  Any questions about that process?

00:06:46  9          THE DEFENDANT:  No, Your Honor.

00:06:47  10          THE COURT:  And you're under oath, and if

00:06:49  11  you answer any question falsely, I just have to ask, do

00:06:52  12  you understand that your false answer could later be

00:06:55  13  used against you?

00:06:56  14          THE DEFENDANT:  I do, Your Honor.

00:06:57  15          THE COURT:  All right.  So I'm holding up

00:06:59  16  in my right hand this plea agreement that I've made

00:07:01  17  reference to, and there are some pretty complicated

00:07:04  18  words and phrases in here.  Did you read it before you

00:07:07  19  signed it?

00:07:08  20          THE DEFENDANT:  I did, Your Honor.

00:07:09  21          THE COURT:  Okay.  Did you understand

00:07:12  22  everything in here before you signed it?

00:07:15  23          THE DEFENDANT:  I was explained it, yes,

00:07:18  24  ma'am, Your Honor.

00:07:19  25          THE COURT:  So what was explained to you in

| | | |
|---|---|---|
| 00:07:22 | 1 | some part at some point in time is there are waivers in |
| 00:07:26 | 2 | here of your right to appeal.  And these waivers are |
| 00:07:28 | 3 | generally effective.  Did you know that? |
| 00:07:30 | 4 | THE DEFENDANT:  I was made aware, Your |
| 00:07:32 | 5 | Honor. |
| 00:07:32 | 6 | THE COURT:  Good.  Does this plea agreement |
| 00:07:35 | 7 | represent in its entirety any and all understandings and |
| 00:07:39 | 8 | agreements you have with the government?  What I want |
| 00:07:44 | 9 | to know is:  Is there some other promise out there that |
| 00:07:47 | 10 | isn't in here? |
| 00:07:49 | 11 | THE DEFENDANT:  No, Your Honor. |
| 00:07:49 | 12 | THE COURT:  Okay.  So nobody's made any |
| 00:07:51 | 13 | other different promises to you in an effort to get you |
| 00:07:54 | 14 | to come to New Bern today and tell me you want to plead |
| 00:07:57 | 15 | guilty? |
| 00:07:58 | 16 | THE DEFENDANT:  No, Your Honor. |
| 00:07:58 | 17 | THE COURT:  Good. |
| 00:08:00 | 18 | Anybody forced you to do this? |
| 00:08:03 | 19 | THE DEFENDANT:  No, Your Honor. |
| 00:08:04 | 20 | THE COURT:  So you're doing it of your own |
| 00:08:05 | 21 | free will because you're, in fact, guilty? |
| 00:08:09 | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 00:08:09 | 23 | THE COURT:  One day I won't have to say |
| 00:08:11 | 24 | this, because it's been a long time, but right now I |
| 00:08:13 | 25 | still have to tell you there's no parole in the federal |

00:08:16 1     system.   It's been abolished, and you don't get out on

00:08:19 2     parole.   Do you understand that?

00:08:22 3               THE DEFENDANT:  Yes, Your Honor.

00:08:22 4               THE COURT:  Okay.  So if I ultimately accept

00:08:25 5     your plea, you can't take it back.

00:08:28 6               THE DEFENDANT:  Understood.

00:08:30 7               THE COURT:  You're still presumed innocent.

00:08:35 8     The burden is still on the shoulders of the government

00:08:37 9     to prove you guilty beyond a reasonable doubt.   The way

00:08:40 10    the government does that is by calling in to court

00:08:43 11    witnesses who would testify in front of the jury, you,

00:08:47 12    and me, from the witness stand.  And you or your

00:08:50 13    attorney would have the right to ask those people

00:08:52 14    questions.  You've also got the right to exercise

00:08:56 15    something called the subpoena power to make people come

00:09:00 16    into this room to provide testimony in support of your

00:09:04 17    defense.  And you've got the right to take the witness

00:09:06 18    stand if you want to.  You don't have to, because

00:09:09 19    you've got that guaranteed right to remain silent.   And

00:09:13 20    if you decided to exercise it, I would look at the jury

00:09:16 21    and tell them: No decision with respect to this man's

00:09:24 22    guilt can be drawn from his decision to remain silent.

00:09:29 23    That's his right.  You can't talk about it in the jury

00:09:32 24    room when you're deliberating.  You can't talk about it

00:09:35 25    when you're arriving at your verdict.  It's his right

00:09:38 1  to exercise that.  And he is presumed innocent until

00:09:42 2  proven guilty.

00:09:44 3           But if I accept your plea, all of those

00:09:47 4  rights are going to go away because you're going to have

00:09:50 5  to admit what you did.

00:09:52 6           Now, is there any other information or

00:09:56 7  advice that you want before you go forward?

00:09:59 8           THE DEFENDANT:  I don't think so, Your

00:10:02 9  Honor.

00:10:02 10          THE COURT:  Have you been truthful in all of

00:10:04 11 your answers?

00:10:05 12          THE DEFENDANT:  I have, Your Honor.

00:10:05 13          THE COURT:  Okay.  If the government went

00:10:07 14 forward on Count One, it would be required to prove

00:10:11 15 beyond a reasonable doubt that you embezzled in or about

00:10:19 16 December 2017 through December 2019, or stole,

00:10:26 17 purloined, or knowingly converted to your own use or the

00:10:30 18 use of another any record, voucher, money, or thing of

00:10:35 19 value valued in excess of $1,000, and you did so

00:10:41 20 knowingly and willfully.

00:10:51 21          So if you went to trial, Ms. Kocher, with

00:10:54 22 respect to that count, what would you be prepared to

00:10:56 23 prove beyond a reasonable doubt?

00:10:58 24          MS. KOCHER:  Your Honor, using various paper

00:11:01 25 documents and forms, some with Mr. Fedak's own

00:11:05 1 signature, emails from his government email account,

00:11:10 2 voicemails that he left, testimony of persons who have

00:11:16 3 direct knowledge and had interaction with Mr. Fedak, the

00:11:20 4 government would show the following:

00:11:22 5           GSAXcess.gov is an internet site for the

00:11:28 6 Federal Excess Personal Property Utilization Program

00:11:31 7 operated by the General Services Administration. A

00:11:34 8 federal agency can report excess personal property for

00:11:38 9 transfer by GSA to other Federal and State agencies as

00:11:43 10 well as search for and obtain excess property. Any

00:11:44 11 office within a federal agency that has unneeded

00:11:47 12 property can declare that property as excess to that

00:11:51 13 agency's need and can be reported to -- that property

00:11:54 14 can be reported to GSA for transfer to other agencies.

00:11:58 15 Agencies can report this excess property either

00:12:01 16 electronically on GSAXcess or on paper forms. The

00:12:07 17 forms, if done that way, must be signed and approved by

00:12:10 18 the agency allocating the property, the agency receiving

00:12:14 19 the property, and the regional GSA Area Property

00:12:18 20 Officer. The agencies then coordinate the shipping and

00:12:21 21 transportation of the property once the transfer is

00:12:24 22 official.

00:12:24 23           In this case the Naval Criminal

00:12:27 24 Investigative Service was called to investigate when a

00:12:32 25 squadron on board Marine Corps Air Station Cherry Point

had found inventory sheets reflecting receipt of over $43,000 of what they believed to be Colt M16 rifles in October of 2019 but which had never been entered in the supply system. The investigation revealed that those items were the iron sights for Colt M16s, not the weapons themselves; however, as a result of that, additional equipment was noted to be missing.

Ultimately the investigation of those items that I mentioned at the outset demonstrate that between December of 2017 and December of 2019, this defendant worked as a ground supply officer on board Cherry Point Marine Corps Air Station. The ground supply officers lead and train marines in coordinating the equipment and material for mission requirements. They supervise the purchasing and contracting of supplies, manage budgets, and develop spending plans. As part of his official duties, Fedak obtained a GSAXcess user identification and had permission to search, select, and approve transfers of other agencies' equipment to Marine Corps Air Station Cherry Point. He was able to obtain a number of things for his unit through this process, new workstations, for instance, and other upgrades of equipment. However, he also ordered and took custody of numerous iPhones, random equipment like a generator, MacBooks, binoculars, and other things, which he then

| | |
|---|---|
| 00:13:54 | 1 |
| 00:13:57 | 2 |
| 00:14:01 | 3 |
| 00:14:06 | 4 |
| 00:14:08 | 5 |
| 00:14:12 | 6 |
| 00:14:16 | 7 |
| 00:14:19 | 8 |
| 00:14:21 | 9 |
| 00:14:23 | 10 |
| 00:14:27 | 11 |
| 00:14:31 | 12 |
| 00:14:34 | 13 |
| 00:14:38 | 14 |
| 00:14:43 | 15 |
| 00:14:46 | 16 |
| 00:14:47 | 17 |
| 00:14:52 | 18 |
| 00:14:55 | 19 |
| 00:14:58 | 20 |
| 00:15:03 | 21 |
| 00:15:06 | 22 |
| 00:15:10 | 23 |
| 00:15:13 | 24 |
| 00:15:14 | 25 |

pawned, gave to coworkers for their personal use, or disposed of in other fashions. He even obtained a Mercedes GLK 350 SUV, and he involved his father in driving to meet him in California where the vehicle was located, loaded on a trailer, and took it or had it taken back to his father's home in Texas. This defendant ultimately claimed that he had lost the title for it. And, of course, the title to that government vehicle would have been retained by the government at that point. Obtained a lost title and sold the vehicle, benefitting financially from that.

And while he did improperly benefit financially, of grave concern is the disposition of many of the 66 firearms that he also requisitioned, only 20 of which have been located or recovered at this time.

And that, Your Honor, would be the government's evidence had it gone to trial on Count One.

THE COURT: Thank you.

Mr. Fedak, did you, as charged in Count One, willfully and knowingly steal property of the United States, that is, articles belonging to the U.S. military with a value exceeding $1,000 with the intent to convert that property to your own use?

THE DEFENDANT: Not the military, but the federal government, yes, ma'am.

00:15:21 1 THE COURT: Well, what do you all want to do
00:15:23 2 about that?
00:15:28 3 MS. KOCHER: I'm sorry; I didn't hear.
00:15:31 4 The agent had called my attention to a
00:15:33 5 mistake in my factual proffer. The vehicle was returned
00:15:37 6 to Arizona, not Texas.
00:15:38 7 THE COURT: Okay. Well, let's focus on
00:15:46 8 this, Mr. Fedak. Let me ask you one more time. With
00:15:48 9 respect to Count One, it charges you with Beginning in
00:15:51 10 or about December of 2017, and continuing to on or about
00:15:57 11 December 3rd of 2019, did you willfully and knowingly
00:16:04 12 embezzle, purloin, and steal property of the United
00:16:11 13 States, that is, various articles belonging to the
00:16:15 14 United States military, with a value exceeding $1,000,
00:16:21 15 with the intent to convert that property to your own
00:16:25 16 use, in violation of that law recorded at Title 18 of
00:16:30 17 the Code, Section 641?
00:16:34 18 MS. BRENNAN: Your Honor, I think the reason
00:16:35 19 he's making the distinction regarding the property
00:16:38 20 belonging to the U.S. military, for example, the car
00:16:41 21 that they referenced at issue was actually in the
00:16:45 22 custody and control of the Border Patrol Agency. The
00:16:49 23 firearms were --
00:16:51 24 THE COURT: Let me just ask you this --
00:16:54 25 let's put all that to the side. Let's look at what

00:16:56 1  he's charged with.   Did he do that with property

00:17:01 2  belonging to the United States military?

00:17:04 3              THE DEFENDANT:   No.   There was no property

00:17:06 4  of the military.   It was all federal government, ma'am.

00:17:09 5  I think those are two separate entities.   So the

00:17:12 6  military is the Marine Corps, Army, Navy, Air Force.

00:17:15 7  There was no property on GSA that belonged to the

00:17:21 8  military.   It belonged to the federal government.

00:17:21 9              MS. BRENNAN:   It belonged to other federal

00:17:23 10  government agencies.   I would note in his plea

00:17:25 11  agreement it actually does not include the language

00:17:27 12  "United States military."   It simply says a thing of

00:17:34 13  value belonging to the United States and was in excess

00:17:37 14  of $1 million, which I believe he would -- I'm sorry,

00:17:43 15  $1,000, which I believe he would readily admit he did.

00:17:46 16              THE DEFENDANT:   Yes, Your Honor.

00:17:49 17              MS. KOCHER:   The government's position, Your

00:17:51 18  Honor, would be when he requisitioned using his

00:17:54 19  identification on behalf of Marine Corps Air Station

00:17:58 20  Cherry Point, it became military property.   And once he

00:18:01 21  received it and used it for his own good, he was

00:18:04 22  stealing United States military property.

00:18:07 23              THE COURT:   Okay.

00:18:21 24              MS. BRENNAN:   Your Honor, I believe in some

00:18:24 25  ways it's a distinction without a difference because I

00:18:28  1  do believe the statute charges theft of government

00:18:31  2  property, regardless of the agency that it belongs to.

00:18:34  3  I understand the way the indictment is worded, and I

00:18:37  4  certainly understand that interpretation, because he was

00:18:41  5  using a requisition system belonging to the military.

00:18:47  6          THE COURT:  The military didn't want that

00:18:49  7  Mercedes, didn't need that Mercedes, but when he did

00:18:52  8  what he did, it's Ms. Kocher's theory that it became the

00:18:55  9  property of the military.

00:18:58  10          MS. KOCHER:  Yes.

00:18:59  11          MS. BRENNAN:  As opposed to being a theft

00:19:03  12  from the Border Patrol Agency, it would be a theft from

00:19:06  13  the military.  Either way, Your Honor, I believe it's a

00:19:08  14  theft from the United States government.

00:19:09  15          THE COURT:  Let's look at the plea

00:19:11  16  agreement.  Count One:  Theft of government property.

00:19:14  17  I'm going to ask you three questions here.  The first

00:19:17  18  question is:

00:19:18  19          Mr. Fedak, did you embezzle, steal, purloin,

00:19:22  20  or knowingly convert to your own use or the use of

00:19:25  21  another any record, voucher, money, or thing of value?

00:19:31  22          THE DEFENDANT:  Yes, Your Honor.

00:19:31  23          THE COURT:  Second question: The record,

00:19:34  24  voucher, money, or thing of value, did it belong to the

00:19:37  25  United States, and was it valued in excess of $1,000?

00:19:40 1          THE DEFENDANT:  Yes, Your Honor.

00:19:41 2          THE COURT:  And a third and final question

00:19:42 3 is:  Mr. Fedak, are you guilty of Count One?

00:19:45 4          THE DEFENDANT:  Yes, Your Honor.

00:19:45 5          THE COURT:  All right.  I'm satisfied with

00:19:47 6 your answers here today.  I think you've come forward

00:19:50 7 to plead guilty to Count One knowingly, voluntarily,

00:19:53 8 understanding the consequences of the guilty plea.

00:19:56 9 Nobody's forced you to do this; nobody has made any

00:19:59 10 promises other than what's in the plea agreement.

00:20:01 11 You're doing this of your own free will.  And moreover,

00:20:04 12 there's a factual basis to support your plea.   So

00:20:07 13 today, sir, I adjudge you guilty of Count One of the

00:20:11 14 superseding indictment.

00:20:14 15          I set your sentencing for about three months

00:20:17 16 from now.  We'll get you on the docket and give you a

00:20:22 17 notice, both sides, notice of that.

00:20:26 18          And if anybody thinks there's a complicated

00:20:29 19 issue coming my way, it benefits you and your client to

00:20:33 20 advance that in writing.  File your brief not later than

00:20:36 21 seven days before the sentencing hearing.

00:20:38 22          And if the defendant wants the Court to

00:20:40 23 consider any certificates or letters of reference or

00:20:44 24 recommendation or other personal information that you

00:20:50 25 think will bear on fashioning a sentence, I welcome you

00:20:54 1 to send that. And again, I would just require that it

00:20:59 2 not be filed any later than seven days before the

00:21:04 3 sentencing date so that I certainly have time to read

00:21:07 4 it.

00:21:09 5 Now, I hope things have been going well in

00:21:11 6 Greensboro. I haven't had any problems of late brought

00:21:14 7 to my attention.

00:21:16 8 From the probation office's perspective, is

00:21:18 9 there anything to report?

00:21:20 10 THE PROBATION OFFICER: No, Your Honor.

00:21:22 11 THE COURT: We have our very diligent

00:21:23 12 third-party custodian here. Anything to report from

00:21:26 13 your end?

00:21:29 14 MR. CHAMBERS: No, Your Honor. Just

00:21:30 15 absolutely fantastic.

00:21:32 16 THE COURT: Great. That's great to hear.

00:21:35 17 MS. BRENNAN: Your Honor, he does have one

00:21:37 18 request. I did speak to Mr. Chambers about this.

00:21:41 19 Currently his conditions are home detention, which means

00:21:47 20 he's restricted to his residence. He has to provide a

00:21:50 21 weekly work schedule, and he has to give 72 hours of

00:21:53 22 notice if he's going to go anywhere other than to the

00:21:57 23 brick and mortgager shop and home. While he is working

00:22:01 24 in the shop, they get a lot of calls to go actually do

00:22:05 25 services in people's homes. Mr. Chambers would very

00:22:08  1   much like to be able to take him with him to assist him

00:22:12  2   there.   Under the current conditions he's not allowed

00:22:15  3   to do that.   If the conditions were switched to a

00:22:18  4   curfew from, say, 7:30 a.m. to 9:00 p.m., then he would

00:22:25  5   be allowed to go as he needed to do during those hours

00:22:29  6   and would simply have to be home at night from 9:00 p.m.

00:22:34  7   until 7:30 in the morning.   The other option would be

00:22:38  8   to remove electronic monitoring altogether.

00:22:42  9           In speaking to Mr. Chambers, he says

00:22:44  10  whenever he would go on these service calls, he would be

00:22:47  11  actually accompanying Mr. Fedak to any of these

00:22:52  12  meetings, or any of this work.

00:22:56  13          Your Honor, we would appreciate if the Court

00:22:59  14  was willing to do some type of modification at this time

00:23:02  15  to his conditions.

00:23:04  16          THE COURT:  It's so your client can always

00:23:07  17  be in the company of Mr. Chambers, but go and service

00:23:12  18  someone's residence at 8:30 at night?

00:23:19  19          MR. CHAMBERS:  Perhaps if we explain what we

00:23:22  20  do.

00:23:26  21          THE COURT:  The court reporter is

00:23:27  22  struggling.  Why don't you come up here and sit next to

00:23:31  23  Mr. Fedak.

00:23:38  24          MR. CHAMBERS:  What we do at Valor Active

00:23:40  25  Group/Valor Outdoor Power Equipment right now is mainly

| | | |
|---|---|---|
| 00:23:45 | 1 | service, repair, sell outdoor power equipment. |
| 00:23:49 | 2 | Everything from sailboats, riding lawnmowers, |
| 00:23:51 | 3 | commercial -- |
| 00:23:52 | 4 | THE COURT:  I thought you were running a |
| 00:23:54 | 5 | hardware store. |
| 00:23:56 | 6 | MR. CHAMBERS:  We do that too.  And Patrick |
| 00:24:00 | 7 | has been an asset.  The proposal for the draft of |
| 00:24:06 | 8 | acquisition is already sent to financing or to the |
| 00:24:10 | 9 | financier.  It's looking good.  We do a lot.  We assist |
| 00:24:15 | 10 | veterans in our community.  But I am on call.  I don't |
| 00:24:20 | 11 | care if it's 2:00 a.m.  Now, I wouldn't want to put that |
| 00:24:24 | 12 | on Pat right now.  We do generators, everything.  I |
| 00:24:28 | 13 | grew up fixing this stuff at ten years old.  I've even |
| 00:24:33 | 14 | done gyroscopic stabilizers on yachts, which if you |
| 00:24:38 | 15 | fail, make a mistake, you're going to die; a big-time |
| 00:24:43 | 16 | machine is going to crush you.  It can be a very hard |
| 00:24:46 | 17 | job.  It's exhilarating, though.  I've trained him. |
| 00:24:50 | 18 | He's already set a new standard in the shop.  I'd take |
| 00:24:55 | 19 | ten more of him. |
| 00:24:56 | 20 | THE COURT:  Okay.  All right.  Well, let's |
| 00:24:59 | 21 | look over at Ms. Kocher's way, and maybe behind her is |
| 00:25:03 | 22 | the probation officer. |
| 00:25:04 | 23 | Do you have any problems with that?  I'll |
| 00:25:11 | 24 | start with the probation officer, just to sort of hear |
| 00:25:14 | 25 | her thoughts. |

00:25:16  1          THE PROBATION OFFICER:  Thank you, Your

00:25:17  2     Honor.  He has been in full compliance, but he's also

00:25:20  3     only been on electronic monitoring for three months.

00:25:26  4     Typically what I see with pretrial defendants, if

00:25:29  5     they've been on for a significant period of time, then

00:25:32  6     it might be considered to modify the conditions to

00:25:37  7     something a little bit less restrictive.  Since he's

00:25:40  8     been in compliance, I wouldn't say our office would

00:25:44  9     necessarily have an objection to it.  But also, he's

00:25:47  10    doing very well, as they've mentioned; and sometimes if

00:25:51  11    it's not broke, why fix it, is kind of the idea.

00:25:59  12         THE COURT:  What's his current curfew or

00:26:04  13    hours of operation, I suppose?

00:26:06  14         THE PROBATION OFFICER:  He's on home

00:26:07  15    detention, which basically means that the probation

00:26:10  16    officer can allow him leave time from the residence for

00:26:13  17    certain purposes, but he doesn't have a specific

00:26:16  18    timeframe.

00:26:16  19         THE COURT:  I'm remembering an appreciation

00:26:20  20    of how early he had to go to work from one of our last

00:26:23  21    hearings.  I'm thinking I understood the hours of

00:26:27  22    operation of the business.  What were they?

00:26:30  23         THE PROBATION OFFICER:  I believe how he's

00:26:31  24    been doing it, my understanding from the officer that's

00:26:34  25    supervising him in the Middle District is that he just

00:26:37  1   makes sure that he has his schedule from work and that

00:26:41  2   he's allowed to go to work at the time that he needs to

00:26:44  3   be there and home when he needs to be home.  And then

00:26:47  4   he's just verifying his employment.  I do understand he

00:26:50  5   only had one day off in the month of May, so he is

00:26:53  6   working every single day.  Then he does give him some

00:26:56  7   out time to do some other things that he needs to do

00:27:00  8   like the grocery store and laundromat.

00:27:04  9             THE DEFENDANT:  Your Honor, I have to submit

00:27:05  10  a schedule every Friday for the following week.  And

00:27:08  11  then I have to follow that up with a phone call to

00:27:10  12  approve my schedule.  If I have any changes to that

00:27:13  13  schedule, I have to do it 72 hours in advance;

00:27:17  14  otherwise, it's denied.  And I'm allowed to put in

00:27:20  15  there time to go to the grocery store.  However, the

00:27:22  16  time at the end, whatever time -- if I get off work at

00:27:26  17  17:30, and I put the grocery store from 5:30 to 6:30 or

00:27:31  18  7:30, if I'm not back in the house at 7:30, regardless

00:27:35  19  of what happens, then I'm in this violation of curfew.

00:27:38  20            THE COURT:  Well, you're working awfully

00:27:40  21  hard.  Why would you want to go out and work at 8:00

00:27:43  22  or 9:00 at night?

00:27:45  23            THE DEFENDANT:  8:00 or 9:00 at night

00:27:47  24  included from the time I got off work, if I needed to go

00:27:48  25  to the grocery store or something like that, I was

00:27:50  1  allowing myself to build that into my schedule.

00:27:55  2        MS. BRENNAN:  Your Honor, he's only allowed

00:27:56  3  to go from the home to the store, the store he's work

00:27:59  4  working.  So if he -- if there was a job at 2:00 in the

00:28:04  5  afternoon, he couldn't leave the brick and mortar

00:28:07  6  location and go do that.  It's a very limited -- very

00:28:16  7  constricting set of conditions.  In fact, when he comes

00:28:21  8  to visit me, we have to -- he has to get the prior

00:28:25  9  approval, and we have to send an email to his probation

00:28:28  10 officer saying he, in fact, met with us from X time to Y

00:28:33  11 time.  A curfew would achieve a lot of the same goals.

00:28:38  12 He would still be on monitoring, but he would have a

00:28:43  13 little bit more freedom as to what he could do for

00:28:45  14 employment during those hours, and also would have a

00:28:48  15 little bit more freedom if his kids had an event that

00:28:53  16 maybe he didn't know about in advance and his wife were

00:28:55  17 willing to allow him to go to that.  It would still

00:29:00  18 provide the Court with all the same monitoring

00:29:03  19 abilities, but it would really lessen the burden on both

00:29:08  20 him and probation.

00:29:11  21        THE COURT:  Okay.  Ms. Kocher?

00:29:14  22        MS. KOCHER:  Your Honor does recall the

00:29:16  23 detention hearing in the case and how strongly the

00:29:19  24 government was encouraging detention.  That followed

00:29:25  25 what the government alleges was obstruction of justice

00:29:28  1   with the hiding and burying of guns.

00:29:34  2         As I noted earlier in the proceeding, there

00:29:36  3   are still 46 guns that we do not know the whereabouts

00:29:41  4   of.   Now, the plea agreement -- I hope and expect to

00:29:46  5   have that information shortly.   I think this motion is

00:29:49  6   precipitous to that extent.   We are concerned about the

00:29:53  7   possibility of ongoing obstruction.   Once we have the

00:29:57  8   opportunity to retrieve those guns, it may be that the

00:30:01  9   government's position will change.   But for today, I

00:30:04  10  feel very strongly that the conditions remain the same.

00:30:07  11        I would note, Your Honor, that two options I

00:30:12  12  heard were given to you.   It seems to me, although the

00:30:15  13  government is opposed to it at this point, but there is

00:30:18  14  a third option, and that would just be to allow the

00:30:22  15  employer to define the work setting other than that

00:30:31  16  brick and mortar building, as long as the employer is

00:30:35  17  with him at the time.   I think that probation can allow

00:30:37  18  that if the employer and third-party custodian stays in

00:30:41  19  touch with probation and let's them know:   We've got a

00:30:45  20  thing at 2:00 this afternoon, and I'm with him, and

00:30:47  21  we're going here; rather than messing with the home

00:30:51  22  detention or the curfew, which has worked for three

00:30:54  23  months.

00:30:55  24        THE COURT:   Okay.   So it may be just best to

00:31:01  25  leave this one alone.   But you've been told that the

00:31:03  1  government is more than willing to think about expanding

00:31:09  2  kind of what your work parameters are, reasonably.

00:31:18  3  I've also heard the defendant saying this would let him

00:31:21  4  just go to a children's ball game or some kind of a

00:31:24  5  performance over the summer that the invitation or the

00:31:27  6  opportunity comes up at the last minute.   I am not

00:31:30  7  really sure how it would structure that.

00:31:34  8           MS. BRENNAN:  Would the Court be willing to

00:31:38  9  specifically note that he is allowed to, within the

00:31:43  10  confines of employment, visit various job sites during

00:31:47  11  the day in the company of the third-party custodian?   I

00:31:50  12  think if that specific instruction was given to the

00:31:53  13  probation office, I believe that would be clear enough

00:31:55  14  that during the hours that he reports he's working, he

00:32:00  15  would have the ability to go from the brick and mortar

00:32:04  16  location.

00:32:04  17           THE COURT:  It's making these house calls?

00:32:09  18  I think we can work that out, don't you?

00:32:11  19           THE PROBATION OFFICER:  Yes, I believe that

00:32:12  20  that won't be a problem, Your Honor.

00:32:13  21           THE COURT:  Rather than me trying to draft

00:32:15  22  the language, I think you all can get together, try to

00:32:19  23  sort something out, and give me a proposed form of an

00:32:24  24  order that would amend the current conditions of

00:32:28  25  release.

```
00:32:30   1          And neither side -- well, I can tell you
00:32:33   2   you're not going to get everything you want, but you can
00:32:35   3   get something.
00:32:37   4          MS. BRENNAN:  Understood, Your Honor.   And
00:32:40   5   I guess the only other thing that we would potentially
00:32:45   6   like included is his understanding under the "other
00:32:47   7   activities" section, the way the probation office in the
00:32:51   8   Middle District reads it does not include visits --
00:32:57   9   taking his children places or going to see his
00:32:59  10   children's ball games or other activities.   Would it be
00:33:04  11   possible to specifically include that as being one of
00:33:07  12   the other activities that he is permitted to do?
00:33:11  13          THE COURT:  Our probation officer is
00:33:14  14   listening to this.  I'm sure she's going to be talking
00:33:17  15   to her counterpart in the Middle District.   There may
00:33:20  16   be some things of which I'm not aware.  We don't -- what
00:33:23  17   we don't want to do is set you up to fail.  We don't
00:33:26  18   want to end up crafting something that urges you to push
00:33:30  19   it to the limit, and you find that you violated the
00:33:33  20   terms and conditions of supervised release.   You could
00:33:36  21   lose a lot of good things that come a defendant's way
00:33:43  22   when they've been on release and have complied.   And it
00:33:47  23   seems like the government is also waiting for a very
00:33:52  24   important debrief.   So I think that might be something
00:33:54  25   that needs to be done.   But I'm open to looking at what
```

| | | |
|---|---|---|
| 00:33:59 | 1 | you all can agree on.  And if you can't agree on |
| 00:34:03 | 2 | everything that you think is vital, you can make the |
| 00:34:05 | 3 | appropriate motion, and I could probably come up with a |
| 00:34:08 | 4 | telephone hearing.  But I'd like to sort of stay out of |
| 00:34:15 | 5 | this at this point and tray to -- I don't think I'm in a |
| 00:34:18 | 6 | position to put a fine period on every sentence.  I |
| 00:34:22 | 7 | think you've got to talk to your counterpart in the |
| 00:34:25 | 8 | Middle District.  But I know that you will work to try |
| 00:34:28 | 9 | to give as much appropriate latitude to the defendant as |
| 00:34:32 | 10 | is possible. |
| 00:34:35 | 11 | So you're doing okay?  You're not being |
| 00:34:39 | 12 | overworked, huh? |
| 00:34:42 | 13 | THE DEFENDANT:  Work is very well.  I just |
| 00:34:45 | 14 | feel like it's restricted based on the intent and the |
| 00:34:48 | 15 | mission of Valor Active Group.  We make it work as best |
| 00:34:54 | 16 | we can.  And I share my counterpart's concerns with the |
| 00:34:59 | 17 | fact of:  Hey, there's -- we're getting restricted as a |
| 00:35:04 | 18 | company, as a group to assist veterans and, you know, |
| 00:35:10 | 19 | disabled people, especially at their homes.  But I |
| 00:35:13 | 20 | understand the Court's decision.  I have no complaints. |
| 00:35:16 | 21 | THE COURT:  I think that part is going to |
| 00:35:18 | 22 | get worked out. |
| 00:35:22 | 23 | THE DEFENDANT:  Well, I spoke with the |
| 00:35:24 | 24 | parole office.  He said it's black and white under the |
| 00:35:27 | 25 | orders of the home restriction that it is not |

00:35:29  1  authorized.  He recommended -- or he didn't recommend;

00:35:32  2  he asked that I ask about just being on curfew.

00:35:37  3       THE COURT:  I'm amenable to it.  Let's just

00:35:40  4  go ahead and see what it looks like on paper.  You and

00:35:43  5  your lawyer and the government work to try to come up

00:35:47  6  with something that both sides believe is workable and

00:35:50  7  in your best interest, and then submit that to me in

00:35:53  8  seven days' time, how about that, if not sooner.  If

00:35:59  9  it's reasonable, I'm going to sign off on it.  Okay?

00:36:02 10       THE DEFENDANT:  Yes, ma'am.

00:36:03 11       THE COURT:  Just keep it up.

00:36:06 12       MR. CHAMBERS:  Your Honor, I'm very serious

00:36:09 13  about this.  But even if nothing that he's requested or

00:36:13 14  his attorney -- please don't laugh.  I just request that

00:36:17 15  I can take him to see the movie Maverick in IMAX.  I'm

00:36:23 16  being very serious.  If we can fit that in.  We asked;

00:36:26 17  we requested.  It's an important movie for us.  We

00:36:30 18  look it -- I'm not trying to be smart.  We really want

00:36:34 19  to go see Maverick.

00:36:36 20       THE COURT:  Who's in Maverick?

00:36:38 21       THE DEFENDANT:  It's the new --

00:36:40 22       THE COURT:  Oh, I've seen that.

00:36:45 23       MR. CHAMBERS:  The new one, Top Gun.

00:36:47 24       THE COURT:  Okay.  You can go to Maverick,

00:36:49 25  the early show.  Write that into the order.  Okay.

00:36:53  1              MR. CHAMBERS:  Thank you, Your Honor.

00:36:55  2              THE COURT:  I think you'll enjoy it.

00:36:57  3              We're going to be at ease or in recess until

00:37:01  4  2:00.

         5              (Concluded at 1:04 p.m.)

         6                        - - -

         7

         8                **C E R T I F I C A T E**

         9

        10    I certify that the foregoing is a correct transcript

        11  from the record of proceedings in the above-entitled

        12  matter.

        13

        14  /s/ Tracy L. McGurk_____               ___3/31/2023___

        15  Tracy L. McGurk, RMR, CRR                     Date

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25